UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALMA DELGADILLO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) <br> _____) | Case No. CV 11-5998 AJW <br><br> MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for SSI benefits on September 28, 2007, alleging that she had been disabled since December 28, 2004 due to back, neck, arm, and hand problems and bilateral carpal tunnel syndrome. [JS 2; Administrative Record ("AR") 114, 154, 156]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") found that plaintiff had severe impairments consisting of diabetes mellitus, chronic cervical sprain, and bilateral carpal tunnel syndrome (status post surgical release). [AR 23]. The ALJ concluded that plaintiff retained

the residual functional capacity to perform a restricted range of light work [AR 25], and that her RFC did not preclude her from performing jobs available in significant numbers in the national economy. [AR 28-29]. Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of his decision. [AR 30].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Vocational expert's testimony**

The ALJ found that plaintiff retained the RFC to perform the lifting, carrying, sitting, standing, and walking requirements of light work, with certain postural limitations. [AR 28]. The ALJ also found that plaintiff is limited to occasional bilateral fine manipulation, occasional gross manipulation with the left hand, and is precluded from jobs requiring her to quickly turn her neck to look to the rear, jobs requiring bilateral typing or keyboarding, and jobs requiring bilateral grasping or squeezing of vibratory tools. [AR 25]. Relying on the testimony of a vocational expert (the "VE"), the ALJ determined that plaintiff's RFC did not preclude performance of the jobs of garment sorter (Dictionary of Occupational Titles ("DOT") job number 222.687-014), ticketer (DOT job number 229.587-018), and gasket inspector (DOT job number 739.687-102). [AR 29, 59-60]. The VE also testified, and the ALJ found, that the VE's opinions were consistent with the DOT. [AR 29, 60].

1    Plaintiff contends that the VE's testimony does not provide substantial evidence supporting the
2 ALJ's finding of nondisability because the jobs identified by the VE were inconsistent with the non-
3 exertional manipulative limitations in plaintiff's RFC, and the ALJ did not properly identify and resolve
4 conflicts between the occupational evidence provided by the VE and the information in the DOT.

5    The Commissioner relies primarily on the DOT for "information about the requirements of work in
6 the national economy." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007)(quoting Social Security
7 Ruling ("SSR") 00-4p, 200 WL 1898704, at *2)). There is a rebuttable presumption that the information in
8 the DOT and its supplementary Selected Characteristics is controlling. Villa v. Heckler, 797 F.2d 794, 798
9 (9th Cir. 1986); accord, Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

10    The Commissioner "also uses testimony from vocational experts to obtain occupational evidence."
11 Massachi, 486 F.3d at 1153. At step five of the sequential evaluation procedure, the Commissioner has the
12 burden of establishing, through the testimony of a VE or by reference to the Medical-Vocational Guidelines,
13 that the claimant can perform other jobs that exist in substantial numbers in the national economy. Bruton
14 v. Massanari, 268 F.3d 824, 827 n.1 (9th Cir. 2001). "Where the testimony of a VE is used at Step Five,
15 the VE must identify a specific job or jobs in the national economy having requirements that the claimant's
16 physical and mental abilities and vocational qualifications would satisfy." Osenbrock v. Apfel, 240 F.3d
17 1157, 1162-1163 (9th Cir. 2001).

18    An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first
19 inquiring whether that testimony conflicts with the DOT. Massachi, 486 F.3d at 1152. A VE's "testimony
20 may give rise to such a conflict in at least two different ways. First, the vocational expert may testify that
21 a particular job requires a particular exertional or skill level, when the DOT expressly provides that the job
22 requires a different exertional level." Carey v. Apfel, 230 F.3d 131, 144 n.2 (5th Cir. 2000). "A second, and
23 different type of conflict may arise when the [VE's] testimony places the ALJ's finding with respect to the
24 claimant's residual functional capacity or the claimant's specific impairments in conflict with the exertional
25 or skill level or the specific skills required for the identified jobs in the DOT." Carey, 230 F.3d at 144 n.2.

26    Neither the DOT nor the vocational expert's testimony "automatically trumps when there is a
27 conflict." Massachi, 486 F.3d at 1153 (footnote omitted). The ALJ must obtain an explanation from the
28 vocational expert for any conflict and then must determine whether the explanation is reasonable, and

whether a basis exists for relying on the expert rather than the DOT. Massachi, 486 F.3d at 1153; see Johnson, 60 F.3d at 1428 (stating that an ALJ may rely on expert testimony which contradicts the DOT "only insofar as the record contains persuasive evidence to support the deviation"). Examples of reasonable explanations for deviation are that the DOT "does not provide information about *all* occupations, information about a particular job not listed in the [DOT] may be available elsewhere, and the general descriptions in the [DOT] may not apply to specific situations." Massachi, 486 F.3d at 1153 n.17 (citing SSR 00-4p, at *2-*3); see Johnson, 60 F.3d at 1428 & n.7 (stating that "persuasive evidence" supporting deviation from the DOT includes expert testimony that a particular subcategory of job not described in the DOT exists in the local job market).

The Commissioner concedes that plaintiff could not perform the DOT jobs of ticketer or gasket inspector with a limitation to occasional bilateral fine manipulation, but he contends that plaintiff's RFC does not preclude her from performing the DOT job of garment sorter. [JS 13].

The DOT states that the job of garment sorter requires occasional fingering and frequent handling and reaching. Fingering, which means "picking, pinching, or otherwise working primarily with the fingers" is synonymous with "fine manipulation" or "fine manual dexterity." SSR 85-15, 1985 WL 56857, at *7. Therefore, plaintiff's limitation to "occasional bilateral fine manipulation" would not preclude her from engaging in the occasional fingering required to perform the job of garment sorter.

Plaintiff's RFC also limits her to occasional gross manipulation with her non-dominant left hand. [AR 25; see AR 318]. Her RFC does not limit use of her dominant right hand for gross manipulation. The DOT job of garment sorter requires frequent gross manipulation in the form of reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands). See SSR 85-15, 1985 WL 56857, at *7.

Plaintiff argues that the ALJ erred in failing to explain how someone who is limited to no more than occasional gross manipulation with the left hand can perform frequent gross manipulation. The DOT, however, "does not contain any requirement of bilateral fingering ability or dexterity . . . ." Carey, 230 F.3d at 146. The DOT rates the relative level of "manual dexterity" and "finger dexterity" required to perform the job of garment sorter as equivalent to that possessed by the lowest third of the population, excluding the bottom ten percent. In other words, the DOT indicates that the job requires a relatively low degree of manual

1  dexterity, which supports the inference that a partial limitation in gross limitation with the non-dominant
2  hand would not prohibit performance of that job. In a social security ruling, the Commissioner has
3  explained that

> [a]ny significant manipulative limitation of an individual's ability to handle and work with
> small objects with both hands will result in a significant erosion of the unskilled *sedentary*
> occupational base. . . . When the limitation is less significant, *especially if the limitation is*
> *in the non-dominant hand*, it may be useful to consult a vocational resource.

SSR 96-9p, 1996 WL 374185, at *8. The Commissioner's policy rulings do not suggest that such a limitation will significantly erode the *light* occupational base. In this case, plaintiff can perform the exertional demands of light work, and her occasional limitation in gross manipulation involves only the non-dominant left hand.

Even the total loss of use of the dominant hand, such as that resulting from an amputation, does not necessarily preclude reliance on a VE's testimony that a claimant can perform jobs classified by the DOT as requiring some degree of handling and manual dexterity. See Carey, 230 F.3d at 145-146 (holding that no conflict existed between the VE's testimony and the DOT where the VE testified that the claimant, whose non-dominant left hand had been amputated, could perform the light, unskilled jobs of cashier or ticket taker, and the DOT specified that both of those jobs require frequent handling and manual dexterity equivalent to that possessed by in the lowest one-third of the population excluding the bottom ten percent); see also Waite v. Bowen, 819 F.2d 1356, 1358, 1360-1361 (7th Cir. 1987) (holding that the ALJ permissibly relied on a VE's testimony that a claimant with no use of his non-dominant left arm could perform light and sedentary alternative jobs, including retail sales clerk, telephone operator, ticket agent, and crossing guard).

The ALJ did not err in finding that no conflict existed between the VE's testimony regarding the DOT job of garment sorter and the DOT's classification of that job. The VE testified that 1,500 such jobs exist locally and 30,000 nationally. [AR 56]. Substantial evidence supports the ALJ's finding that plaintiff was not disabled because her RFC did not preclude performance of the DOT job of garment sorter. Accordingly, any error in the ALJ's finding that plaintiff could perform the alternative jobs of ticketer or gasket inspector is harmless.

**Dr. Nogales**

Plaintiff also contends that the ALJ ignored and failed properly to consider the opinion of treating psychologist Ana Nogales, Ph.D.

Dr. Nogales evaluated plaintiff in October 2006 and again in March 2007 in connection with a workers' compensation claim plaintiff filed after developing hand, wrist, and arm problems. [AR 44-45, 602-682]. On initial evaluation, plaintiff complained of feelings of depression and inability to cope with her pain and frustration. [AR 682]. The diagnosis was major depression, single episode, moderate. [AR 682, 685]. Dr. Nogales recommended psychiatric consultation for medication, biofeedback training, and individual psychotherapy for approximately three to five months. [AR 667]. She opined that plaintiff was temporarily totally disabled and unable to work. [AR 667-671].

On October 31, 2006, plaintiff saw a psychiatrist. Dr. Yacoub, who prescribed Prozac ten milligrams daily and recommended that plaintiff remain on that regimen for six to nine months. [AR 647]. Plaintiff saw Dr. Yacoub again in January 2007 and February 2007. [AR 609]. Prozac helped her anxiety and depression, but she reported still feeling anxious, crying easily, and feeling "sad when faced with bad news." [AR 609]. Dr. Yacoub increased plaintiff's Prozac dosage to 40 milligrams daily and added trazodone at 50 milligrams or 100 milligrams at bedtime. Plaintiff was compliant with her medication "at times." [AR 609].

On March 5, 2007, Dr. Nogales issued a permanent and stationary report, meaning that plaintiff's condition had reached "maximum medical improvement . . . from a psychological standpoint" and was "well stabilized and unlikely to change substantially in the next year with or without medical treatment." [AR 626]. Dr. Nogales diagnosed plaintiff's condition as major depression, single episode, mild. [AR 621]. She opined that plaintiff's "degree of disability" was "slight," meaning "can be tolerated, but would cause some handicap in the performance of the employment activity precipitating the condition" to "moderate," meaning that "the condition can be tolerated, but would cause marked handicap in the performance of the employment activity precipitating the condition." [AR 627]. Dr. Nogales opined that plaintiff had "slight" impairment in her ability to perform complex or varied tasks, relate to other people beyond giving and receiving instructions, influence people, and accept and carry out responsibility for direction, control, and planning. Dr. Nogales opined that plaintiff had a "slight to moderate" impairment in her ability to perform simple and repetitive tasks, maintain an appropriate work pace, and make generalizations, evaluations, or decisions without immediate supervision. [AR 633]. Dr. Nogales said that plaintiff could not return to "the

same employment setting or to any other employment of the same vocation," and that she was a candidate for vocational rehabilitation. [AR 629].

In his final progress report dated June 26, 2007, Dr. Yacoub reported that plaintiff said that she felt "more relaxed on medicine." [AR 602]. Dr. Nogales noted that plaintiff's mood, affect, and psychiatric activities were improving. Plaintiff's work status was "per PCP [primary care physician]." [AR 602].

The ALJ discussed Dr. Nogales' reports but mistakenly assumed that she, rather than Dr. Yacoub, had prescribed medication. [AR 28]. The ALJ reasonably concluded from the record that plaintiff's psychiatric symptoms had improved with medication. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling."). The ALJ described Dr. Nogales's work restrictions as "vague," and he noted that she endorsed plaintiff for vocational retraining, negating any inference that she considered plaintiff psychiatrically disabled. The ALJ permissibly noted that nothing in plaintiff's hearing testimony indicated that she had a severe mental impairment. [AR 24]. Plaintiff testified that she was no longer receiving any psychiatric treatment, and that she had only undergone treatment while her workers' compensation claim was pending, that is, for a period of about nine months. [AR 51]. See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995) ("An individual is disabled within the meaning of the Social Security Act when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months.") (internal quotation marks and ellipsis omitted), cert. denied, 517 U.S. 1122 (1996). Plaintiff also said that she needed more psychiatric treatment because "when I talk about this it makes me cry" [AR 51], but she did not describe any specific or continuing work-related psychiatric limitations.

To the extent that Dr. Nogales's "slight" or "slight to moderate" restrictions suggested that plaintiff had a mental impairment that more than minimally affected plaintiff's ability to perform basic work-related mental activities such as understanding, carrying out, and remembering simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations, the ALJ gave specific, legitimate reasons for rejecting that opinion and finding that plaintiff did not have a severe mental impairment. See 20 C.F.R. §§ 404.1521(b), 416.921(b); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006).

7

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

June 4, 2012

_____
ANDREW J. WISTRICH
United States Magistrate Judge